UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE VEECO INSTRUMENTS INC.          :
SECURITIES LITIGATION                 :          No. 7:05-MD-01695-CM-GAY
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :
THIS DOCUMENT RELATES TO:             :
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :
AUGUST SCHUPP, III, derivatively on behalf   :
of VEECO INSTRUMENTS, INC.,           :
                                      :          No. 7:05-CV-10225-CM
            Plaintiff,                :
                                      :
      v.                              :
                                      :
EDWARD H. BRAUN, et al.,              :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :
DAVID ALTMAN, derivatively on behalf  :
of VEECO INSTRUMENTS, INC.,           :
                                      :          No. 7:05-CV-10226-CM
            Plaintiff,                :
                                      :
      v.                              :
                                      :
EDWARD H. BRAUN, et al.,              :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND THEIR CONSOLIDATED AMENDED
SHAREHOLDER DERIVATIVE COMPLAINT AND TO FILE A SECOND
CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Phone: (212) 351-4000
Fax: (212) 351-4035

November 22, 2006

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................. 4

    I.      In March 2005, Plaintiffs File Suit ...................................................... 4

    II.    Six Months Later, Plaintiffs File An Amended Complaint ................... 4

    III.   Fourteen Months Later, Plaintiffs Oppose Defendants' Motion To Dismiss......... 4

    IV.   Fifteen Months Later, Plaintiffs Serve Document Discovery Requests ............... 5

    V.    Sixteen Months Later, Plaintiffs Agree To A Pretrial Schedule That Provides For The Close Of Document Discovery On August 21, 2006 ..................................... 5

    VI.   Nineteen Months Later, The Parties Participate In A Mediation.......................... 6

    VII.  Twenty Months Later, Plaintiffs Suddenly Seek Leave To Add New Claims And New Defendants Relating To Veeco's Stock Option Grants ................................. 6

ARGUMENT ................................................................................................... 7

    I.      Plaintiffs' Motion For Leave To Amend Should  Be Denied For Undue Delay And Prejudice .......................................................................................... 7

    II.    Plaintiffs' Motion For Leave To Amend Should Be Denied  Because Plaintiffs Cannot Demonstrate Demand Futility With Respect To Their Proposed New Claims ....................................................................................... 11

    III.   Plaintiffs' Motion For Leave To Amend Should Be Denied Because Plaintiffs' Proposed New Claims Fail As A Matter Of Law ................................................ 16

           A.    All Of Plaintiffs' Proposed Claims, Insofar As They  Relate To The 2003 And 2004 Stock Option Grants,  Are Directly Refuted By Public SEC Filings................................................. 17

           B.    All Of Plaintiffs' Proposed Claims, Insofar As They Relate To Stock Option Grants Made Prior To 2003, Are Time-Barred ................. 17

           C.    All Of Plaintiffs' Proposed Claims Based On Alleged Breaches Of Fiduciary Duty Fail As A Matter Of Law ........................................... 20

           D.    All Of Plaintiffs' Proposed Claims Based On Alleged Contractual Violations Fail As A Matter Of Law..................................... 20

**TABLE OF CONTENTS**
(Continued)

Page

E.    Plaintiffs' Proposed Accounting Claim Fails As A Matter Of Law .................................................................................... 21

F.    Plaintiffs' Proposed Claim for Unjust Enrichment, Insofar As It Is Based On Alleged Backdating Of Stock Options, Fails As A Matter Of Law.......................................................................... 22

CONCLUSION................................................................................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*A.V. By Versace, Inc. v. Gianni Versace, S.p.A.,*
  160 F. Supp. 2d 657 (S.D.N.Y. 2001) ........................................................................ 7

*Accusan, Inc. v. Xerox Corp.,*
  1998 WL 60991 (S.D.N.Y. Feb. 11, 1998) ............................................................... 11

*Acito v. Imcera Group, Inc.,*
  47 F.3d 47 (2d Cir. 1995) ....................................................................................... 16

*AmerisourceBergen Corp. v. Dialysist West, Inc.,*
  465 F.3d 946 (9th Cir. 2006) .................................................................................... 9

*Ansam Assocs., Inc. v. Cola Petroleum, Ltd.,*
  760 F.2d 442 (2d Cir. 1985) .................................................................................... 10

*Aronson v. Lewis,*
  473 A.2d 805 (Del. 1984) ........................................................................................ 15

*Barrows v. Forest Labs., Inc.,*
  742 F.2d 54 (2d Cir. 1984) ..................................................................................... 10

*Bazak Int'l Corp. v. Tarrant Apparel Group,*
  247 F. Supp. 2d 1 (S.D.N.Y. 2004) ..................................................................... 22, 23

*BBS Norwalk One, Inc. v. Raccolta, Inc.,*
  69 F. Supp. 2d 123 (S.D.N.Y. 1999) ....................................................................... 18

*Brown v. De Fillipis,*
  717 F.Supp. 172 (S.D.N.Y. 1989) ............................................................................. 9

*Calabria v. Associated Hospital Serv.,*
  459 F. Supp. 946 (S.D.N.Y. 1978) .......................................................................... 21

*Caviness v. Evans,*
  229 F.R.D. 354 (D. Mass. 2005) .............................................................................. 16

*Clark v. Nevis Capital Management, LLC,*
  2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) .............................................................. 18

*Dairy Queen, Inc. v. Wood,*
  369 U.S. 469 (1962) ............................................................................................... 21

*Dover Ltd. v. A.B. Watley, Inc.,*
  423 F. Supp. 2d 303 (S.D.N.Y. 2006) ..................................................................... 21

*Fike v. Ruger,*
  754 A.2d 254 (Del. Ch. 1999) ................................................................................. 18

*Friedman v. Consolidated Edison Co. of New York, Inc.,*
  1999 WL 182595 (S.D.N.Y. Mar. 31, 1999) ........................................................... 7, 8

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Guttman v. Huang,*
823 A.2d 492 (Del. Ch. 2003) ........................................................................ 13, 16

*In re Forest Labs., Inc. Derivative Litig.,*
450 F. Supp. 2d 379 (S.D.N.Y. 2006) ...................................................... 12, 13, 14

*In re Initial Public Offering Secs. Litig.,*
214 F.R.D. 117 (S.D.N.Y. 2002) ........................................................................ 5

*In re Marvel Entertainment Group, Inc.,*
273 B.R. 58 (D. Del. 2002) ................................................................................ 19

*In re MAXXAM, Inc./Federated Development Shareholders Litig.,*
1995 WL 376942 (Del. Ch. June 21, 1995) ................................................... 18, 19

*In re Teligent, Inc.,*
346 B.R. 73 (Bankr. S.D.N.Y. 2006) ............................................................... 9, 10

*In re Wireless Tel. Servs. Antitrust Litig.,*
2004 WL 2244502 at *6 (S.D.N.Y. Oct. 6, 2004) ............................................... 9

*IOTEX Communications, Inc. v. Defries,*
1998 WL 914265 (Del. Ch. Dec. 21, 1998) ........................................................ 20

*Katz v. Morgenthau,*
892 F.2d 20 (2d Cir. 1989) .................................................................................. 7

*Kaufman v. Guest Capital, L.L.C.,*
386 F. Supp. 2d 256 (S.D.N.Y. 2005) ........................................................... 21, 22

*Kearney v. ABN AMRO, Inc.,*
2006 WL 2354819 (S.D.N.Y. Aug. 11, 2006) ..................................................... 19

*Krahmer v. Christie's Inc.,*
903 A.2d 773 (Del. Ch. 2006) ............................................................................ 18

*LaSala v. Needham & Co., Inc.,*
399 F. Supp. 2d 466 (S.D.N.Y. 2005) ................................................................ 21

*Levitch v. Columbia Broad. Sys., Inc.,*
94 F.R.D. 292 (S.D.N.Y. 1982) ............................................................................ 4

*Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fid., Ltd.,*
689 F. Supp. 1340 (S.D.N.Y. 1988) .................................................................... 11

*Marvullo v. Gruner & Jahr,*
105 F. Supp. 2d 225 (S.D.N.Y. 2000) ................................................................ 17

*Middle Atlantic Utils. Co. v. S.M.W. Dev. Corp.,*
392 F.2d 380 (2d Cir. 1968) ................................................................................. 8

*Olin Corp. v. Insurance Co. of North America,*
1986 U.S. Dist. LEXIS 15878 (S.D.N.Y. Dec. 30, 1986) ................................... 10

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Priestley v. American Airlines, Inc.,*
  1991 WL 64459 (S.D.N.Y. Apr. 12, 1991) .............................................. 9

*Rales v. Blasband,*
  634 A.2d 927 (Del. 1993) ....................................................................... 12

*Rapoport v. Asia Elecs. Holding Co.,*
  88 F. Supp. 2d 179 (S.D.N.Y. 2000) ...................................................... 17

*Rattner v. Bidzos,*
  2003 WL 22284323 (Del. Ch. Oct. 7, 2003) .................................... 12, 14

*Ruggerio v. Estate of Poppiti,*
  2005 WL 517967 (Del. Ch. Feb. 23, 2005) ............................................ 18

*Sanders v. Thrall Car Mfg. Co.,*
  582 F. Supp. 945 (S.D.N.Y. 1983) ........................................................... 9

*SATCOM Int'l Group v. ORBCOMM Int'l Partners,*
  2000 WL 729110 (S.D.N.Y. June 6, 2000) ............................................... 8

*Smith v. Cadbury Beverages, Inc.,*
  116 F.3d 466, 1997 WL 314737 (2d Cir. June 12, 1997) ..................... 9, 11

*Steed Finance LDC v. Laser Advisers, Inc.,*
  258 F. Supp. 2d 272 (S.D.N.Y. 2003) ..................................................... 20

*Stone v. Ritter,*
  2006 WL 302558 (Del. Ch. Jan. 26, 2006), *aff'd,* 2006 WL 3169168 (Del. Nov. 6, 2006) ..... 15

*Total Physicians, P.A. v. O'Hara,*
  2002 WL 31667901 (Del. Super. Oct. 29, 2002)..................................... 23

*Walton v. Morgan Stanley & Co. Inc.,*
  623 F.2d 796 (2d Cir. 1980) ................................................................... 18

*Wilder v. Village of Amityville,*
  288 F. Supp. 2d 341 (E.D.N.Y. 2003) ...................................................... 8

Defendants respectfully submit this memorandum of law in opposition to plaintiffs' motion for leave to amend their Consolidated Amended Verified Shareholder Derivative Complaint ("FAC") and file a Second Consolidated Amended Verified Shareholder Derivative Complaint ("Proposed SAC").

## PRELIMINARY STATEMENT

Plaintiffs' motion to amend should be rejected for at least three separate reasons. *First*, plaintiffs' motion to add new claims – all centered around alleged backdating of stock options – should be denied for undue delay and prejudice. Plaintiffs waited until November 2006, or twenty months after filing suit and nearly three months after the close of document discovery in August 2006, to seek leave to amend. Though plaintiffs bear the burden of explaining their delay, all plaintiffs have proffered is a conclusory assertion that "plaintiffs' counsel only recently learned of the backdating claims in the course of their investigation." Plaintiffs' Memorandum of Law, dated November 7, 2006 ("Ps' Br."), at 6. Plaintiffs do not attempt to explain their delay – and with good reason. All of the information on which plaintiffs rely for their proposed new claims was publicly available in Veeco's SEC filings and thus available to plaintiffs at the time they filed their original complaints and their First Amended Complaint in 2005.

Contrary to plaintiffs' contention that their proposed amendments "overlap significantly with claims set forth in the FAC" (Ps' Br. at 7), plaintiffs' motion seeks leave to add *eight* new defendants[1] and *eight* new claims[2] based on entirely different facts over a period spanning *eight*

---

[1] Plaintiffs seek to add the following eight persons as new defendants: John F. Rein, Jr., Francis Steenbeeke, John Kiernan, Don Kania, Anthony Martinez, Emmanuel Lakios, David Perloff and Timothy Stultz. Plaintiffs allege that all of the proposed new defendants, and also current defendants Ed Braun and Walter Scherr, received backdated stock options during the years 1996 through 2004. Plaintiffs refer to these defendants collectively as the "Option Defendants."

*years*. There is no "overlap" whatsoever. In the nearly two years that this action has

been pending, there has been no discovery provided relating to Veeco's stock option grants,

no discovery regarding options relating to the eight new defendants plaintiffs seek to add and no

discovery for the majority of the "Relevant Stock Option Period" of 1996 to 2004 because the

"Relevant Period" is defined by plaintiffs in the First Amended Complaint as November 3, 2003 to

February 10, 2005. Thus, if plaintiffs are granted leave to amend, document discovery will have

to be re-opened and the coordinated schedule to which the derivative plaintiffs, securities-law

plaintiffs and defendants all agreed will have to be extended for no reason other than the derivative

plaintiffs' lack of diligence. Defendants (and the securities-law plaintiffs) should not be

prejudiced by the derivative plaintiffs' inexcusable delay. Moreover, it would be offensive to

---

[Footnote continued from previous page]

2 As for the eight new claims, some are asserted against all defendants and others are asserted only against the Option Defendants. The proposed new claims are as follows:

- Count IV – Accounting (All Defendants)

- Count V – Breach of Fiduciary Duty and Unjust Enrichment Related to the Receipt of Backdated Options (Option Defendants)

- Count VI – Breach of Fiduciary Duty and Unjust Enrichment Related to Salaries, Bonuses and Other Incentive Compensation (Option Defendants)

- Count VII – Breach of Fiduciary in Connection with Management of Veeco (All Defendants)

- Count VIII – Dissemination of False and Misleading Statements (in breach of fiduciary duties) (All Defendants)

- Count IX – Breach of Fiduciary Duty and/or Aiding and Abetting (All Defendants)

- Count X – Rescission (Option Defendants)

- Count XI – Breach of Contract – (asserted against All Defendants but appears to relate only to the Option Defendants)

judicial economy and the Court's case management efforts to permit plaintiffs to add entirely

unrelated claims against new defendants covering a different time period into an existing litigation

so late in the discovery process (with fact discovery scheduled to end on January 31, 2007).

*Second*, plaintiffs' motion to amend should be denied because plaintiffs cannot satisfy their

burden of demonstrating demand futility – no demand was made here – with respect to their

proposed options backdating claims. None of Veeco's eight outside directors are identified as

proposed "Option Defendants." Thus, there is no chance of a "substantial likelihood of liability"

(Proposed SAC ¶ 113) on the part of a majority of Veeco's directors with respect to the proposed

new claims. Furthermore, plaintiffs' Proposed Second Amended Complaint fails to provide any

particularized allegations indicating that any backdating of options even took place. Plaintiffs

have done nothing more than proffer Veeco's publicly-disclosed stock option grants for certain

years and speculate that there must have been backdating because the price of Veeco's stock rose

following some of the stock option grants. Plaintiffs' speculation is patently insufficient and

unsupported by any well-pled facts. By way of example, plaintiffs' contention that Veeco's stock

option grants in 2003 and 2004 were backdated is directly refuted by Form 4s that were filed

publicly and *contemporaneously* with the 2003 and 2004 grants. Plaintiff does not allege that

there has been any government investigation or any financial restatement relating to Veeco's stock

option grants. In short, plaintiffs' conclusory allegations simply do not come close to creating a

reasonable doubt as to the disinterestedness and independence of a majority of Veeco's board of

directors.

*Third*, plaintiffs' motion to amend should be denied because plaintiffs' proposed claims fail

as a matter of law. As explained below, plaintiffs' proposed new options backdating claims would

not survive a Rule 12(b)(6) motion to dismiss because they are directly refuted by public SEC

filings, time-barred under applicable statutes of limitations and insufficiently supported by well-pled allegations of fact.

In sum, plaintiffs' proposed new claims are patently meritless. Plaintiffs apparently hope that adding a host of new claims and new defendants will force defendants into a favorable *in terrorem* settlement. Plaintiffs' gamesmanship should not be countenanced. *See Levitch v. Columbia Broad. Sys., Inc.*, 94 F.R.D. 292, 295 (S.D.N.Y. 1982) (denying leave to amend where plaintiffs' new claims were asserted "in an apparent attempt . . . to extract a favorable settlement").

## STATEMENT OF FACTS

### I.    In March 2005, Plaintiffs File Suit

Plaintiffs first filed suit more than twenty months ago in March 2005 in the wake of Veeco's announcement that it would be issuing a restatement relating to accounting errors at its TurboDisc division. *See* Ps' Br. at 2.

### II.    Six Months Later, Plaintiffs File An Amended Complaint

On September 26, 2005, plaintiffs filed their Amended Complaint. The Amended Complaint alleged breaches of fiduciary duties in connection with Veeco's TurboDisc division restatement and purported U.S. export-law violations. Plaintiffs' Amended Complaint defined the "Relevant Period" as November 3, 2003 to February 10, 2005.

There was no reference in the Amended Complaint to any alleged wrongdoing in connection with Veeco's stock option grants.

### III.    Fourteen Months Later, Plaintiffs Oppose Defendants' Motion To Dismiss

On May 3, 2006, plaintiffs filed their opposition papers to defendants' motion to dismiss. *See* Derivative Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss,

4

dated May 3, 2006. Plaintiffs' opposition papers to defendants' motion to dismiss were devoid of any reference to alleged wrongdoing in connection with Veeco's stock option grants.[3]

### IV.    Fifteen Months Later, Plaintiffs Serve Document Discovery Requests

On June 28, 2006, plaintiffs served their first request for documents. *See* Plaintiffs' First Request for the Production of Documents, dated June 28, 2006 (attached as Exhibit A to the Declaration of J. Ross Wallin, dated November 22, 2006 ("Wallin Decl.")).

Plaintiffs' document request defined the "relevant time period" as "January 1, 2003 through the date of production." *Id.* at 2.

### V.    Sixteen Months Later, Plaintiffs Agree To A Pretrial Schedule That Provides For The Close Of Document Discovery On August 21, 2006

On July 27, 2006, plaintiffs entered into a stipulation with defendants and the securities plaintiffs to coordinate discovery in the derivative and securities actions. The stipulation was jointly submitted by the parties and provided, *inter alia*, that document production by the parties "shall be completed by August 21, 2006." Joint Stipulation, signed July 27, 2006, ¶ 1 (Wallin Decl. Ex. B). The pretrial schedule set forth in the stipulation was subsequently ordered by the Court on July 28, 2006.

At no point during the discussions concerning the pretrial schedule did plaintiffs tell the Court, the defendants or the securities-law plaintiffs that they were investigating or even considering investigating Veeco's stock option grants.

---

[3]  By contrast, in *In re Initial Public Offering Secs. Litig.*, 214 F.R.D. 117 (S.D.N.Y. 2002) (*see* Ps' Br. at 5), "defendants had notice of plaintiffs' intention [to seek leave to amend] to join additional named plaintiffs well in advance of the filing of their motions to dismiss." *Id.* at 122. Plaintiffs here failed to provide defendants or the Court with any advance notice of their intention to seek leave to amend.

**VI.    Nineteen Months Later, The Parties Participate In A Mediation**

Pursuant to the parties' stipulation, defendants produced approximately 175,000 pages of documents to the derivative and securities-law plaintiffs. On October 11 and 12, 2006, the parties participated in a mediation but were unable to resolve their dispute.

**VII.    Twenty Months Later, Plaintiffs Suddenly Seek Leave To Add New Claims And New Defendants Relating To Veeco's Stock Option Grants**

On November 7, 2006, more than eleven weeks after the scheduled close of document discovery on August 21, 2006, plaintiffs suddenly filed a motion seeking leave to add new claims and new defendants relating to Veeco's stock option grants over an eight-year period.

Plaintiffs offer no credible explanation why they waited twenty months – well after the close of document discovery – to seek leave to add new claims. Nor could they. Plaintiffs' motion and proposed Second Amended Complaint are based entirely on publicly-available information in Veeco's SEC filings. This information was available to plaintiffs at the time they filed their original complaints and their First Amended Complaint in 2005.

Plaintiffs seek leave to add eight new claims and eight new defendants based on allegations of options backdating that have not been advanced in either the derivative plaintiffs' prior pleadings or any of the securities law plaintiffs' pleadings. *See* Ps' Br. at 2 n.3; Proposed SAC ¶¶ 155-87. Moreover, plaintiffs seek to expand the relevant time period by seven years so that discovery will extend back to 1996. *See* Ps' Br. at 1-2; Proposed SAC at 1-2.

Plaintiffs do not allege, nor could they, that there has been any government investigation of Veeco's stock option grants or any restatement relating to Veeco's stock option grants. Instead, plaintiffs baldly speculate that there may be "potential costly and damaging investigations" and "an additional restatement of the Company's financial results." Ps' Br. at 4.

Document discovery is substantially complete, and the cutoff date for deposition discovery is January 31, 2007. *See* Wallin Decl. Ex. B. There have been no document discovery from any defendants on the issue of options, and no document discovery of any sort relating to most of the new defendants plaintiffs seek to add. Moreover, there has been no document discovery for what the plaintiffs have dubbed the "Relevant Stock Option Period" of 1996 to 2004 because the "Relevant Period" is defined by plaintiffs in the First Amended Complaint as November 3, 2003 to February 10, 2005.

## **ARGUMENT**

As courts have made clear, "leave to amend should be denied . . . where the proposed amendment would be futile, if plaintiffs have demonstrated undue delay, bad faith, or dilatory motive, or where defendants would suffer undue prejudice." *Friedman v. Consolidated Edison Co. of New York, Inc.*, 1999 WL 182595, at *1 (S.D.N.Y. Mar. 31, 1999) (denying motion to amend). In addition, "if the proposed claim[s] would be subject to dismissal under Rule 12(b)(6), the Court should refuse to grant leave to amend." *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 160 F. Supp. 2d 657, 666 (S.D.N.Y. 2001) (denying motion to amend). Plaintiffs' motion fails each of these factors.

**I.    Plaintiffs' Motion For Leave To Amend Should
Be Denied For Undue Delay And Prejudice**

Plaintiffs' motion for leave to amend should be denied for undue delay and prejudice. Plaintiffs did not seek leave to add their new claims until *twenty months* after filing suit and well after the close of document discovery. *See Katz v. Morgenthau*, 892 F.2d 20, 22 (2d Cir. 1989) (affirming denial of motion to amend filed by plaintiff "sixteen months after he filed his initial complaint"); *SATCOM Int'l Group v. ORBCOMM Int'l Partners*, 2000 WL 729110, at *24 (S.D.N.Y. June 6, 2000) (denying leave to amend because "SATCOM's motion to amend comes

7

fourteen months after it commenced this litigation").[4]  It is well established that "where the plaintiff seeks to amend the complaint after an inordinate delay it bears the burden to explain that delay." *Friedman*, 1999 WL 182595, at *1.

Here, plaintiffs offer no more than a conclusory assertion that "plaintiffs' counsel only recently learned of the backdating claims in the course of their investigation." Ps' Br. at 6.  The information that plaintiffs' counsel professes to have "recently learned," however, was available to plaintiffs at the time they filed their original complaints and their First Amended Complaint in 2005.  Indeed, plaintiffs' proposed backdating allegations are based entirely on Veeco's SEC filings, which disclose the date of Veeco's option grants, the strike prices for the options and other executive compensation information, and Veeco's stock price history. *Compare* Veeco Schedule 14A Proxy Statements for years 1996 to 2004 (Wallin Decl. Exs. C-K), *with* Proposed SAC ¶¶ 118, 125.

Plaintiffs do not identify any information that was not available to them at the time they filed their earlier complaints and do not identify any new facts that were developed during discovery.  Accordingly, plaintiffs have failed to satisfy their burden of demonstrating good cause to excuse their delay. *See SATCOM Int'l Group*, 2000 WL 729110, at *24 (denying leave to amend because "SATCOM's failure promptly to amend is inexcusable"); *Friedman*, 1999 WL 182595, at *2 (denying leave to amend; "The claims the plaintiff seeks to add are based on information available at the very latest . . . on March 6, 1998. Nonetheless, plaintiff waited

---

4    Plaintiffs' reliance on *Middle Atlantic Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380 (2d Cir. 1968). (Ps' Br. at 5)is puzzling.  In *Middle Atlantic*, the plaintiff was granted leave to amend only because its original cause of action was unexpectedly "nullified by subsequent town and state action." *Id.* at 384.  None of plaintiffs' claims here have been "nullified" by unexpected state action.  Plaintiffs' reliance on *Wilder v. Village of Amityville*, 288 F. Supp. 2d 341 (E.D.N.Y. 2003) (Ps' Br. at 5) is equally puzzling.  The decision in *Wilder* did not even concern a motion to amend.

another six months before filing a motion to amend the complaint."); *Priestley v. American Airlines, Inc.*, 1991 WL 64459, at *2 (S.D.N.Y. Apr. 12, 1991) (denying leave to amend because the alleged new facts "were known to plaintiff at the time the original complaint was filed").[5]

Moreover, it would severely prejudice defendants to have to defend these eight new proposed claims, which are unrelated to the existing claims in subject matter and time period. And there is no basis for extending discovery – at great expense – to accommodate these belated claims. Plaintiffs' proposed amendments concern different facts and different claims from those for which the parties have been engaged in coordinated discovery in the derivative and securities actions. *See Smith v. Cadbury Beverages, Inc.*, 116 F.3d 466, 1997 WL 314737, at *1 (2d Cir. June 12, 1997) (affirming denial of leave to amend because "the new claims relate to a different factual circumstance and involve application of a different legal analysis"); *In re Teligent, Inc.*, 346 B.R. 73, 77 (Bankr. S.D.N.Y. 2006) (denying leave to amend; "the new claim would severely prejudice the defendant because it involves a new theory and requires discovery and proof of different facts").

_____

[5] *See also AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (affirming denial of leave to amend, with eight months of discovery remaining, because, "in evaluating undue delay, we also inquire whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading"); *In re Wireless Tel. Servs. Antitrust Litig.*, 2004 WL 2244502, at *6 (S.D.N.Y. Oct. 6, 2004) (denying leave to amend, finding that plaintiffs had made a "deliberate choice" not to pursue the proposed claims when initially bringing suit: "All of this Court's many rulings on discovery issues have been framed by an understanding of the surviving allegations in the Amended Complaint. To permit the plaintiffs to change and expand the focus of their case at this stage in the litigation demands too much of the defendants."); *Brown v. De Fillipis*, 717 F.Supp. 172, 178 (S.D.N.Y. 1989) (denying leave to amend when plaintiff "moved to amend his complaint to include facts within his knowledge at the time the original complaint was filed"); *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952-53 (S.D.N.Y. 1983) (denying leave to amend because "the liberality with which a court grants leave to amend does not impart to litigants the privilege of re-shaping their legal theories endlessly, even where there is no evidence of improper motive or dilatory objectives").

As noted above, plaintiffs' Proposed Second Amended Complaint also defines the "Relevant Stock Option Period" as 1996 to 2004, whereas the current First Amended Complaint and all discovery to date has concerned the "Relevant Period" of November 3, 2003 to February 10, 2005. This expanded time period is also a reason to deny the motion. *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial for leave to amend because "Ansam's new claims concerned a different period of time"); *Olin Corp. v. Insurance Co. of North America*, 1986 U.S. Dist. LEXIS 15878, at *4 (S.D.N.Y. Dec. 30, 1986) (denying leave to amend because "the RICO claims may also involve time periods beyond those already implicated in this case").

If plaintiffs were granted leave to add their proposed new claims and proposed new defendants, the coordinated schedule to which the derivative plaintiffs, securities-law plaintiffs and defendants all agreed will have to be extended. The derivative and securities actions have been pending for nearly two years. Defendants (and the securities-law plaintiffs) should not be prejudiced because of the lack of diligence by the derivative plaintiffs' counsel. *See Barrows v. Forest Labs., Inc.*, 742 F.2d 54, 58 (2d Cir. 1984) (affirming denial of leave to amend because plaintiffs' proposed new claims would "unfairly prejudice" defendants by "delaying the trial of the case"); *In re Teligent*, 346 B.R. at 77 (denying leave to amend because "the amendment will delay the resolution of this case"). It would be even more prejudicial to force the defendants to now investigate and prepare their defense to an entirely new set of allegations in the abbreviated period that remains before trial. *See Olin*, 1986 U.S. Dist. LEXIS 15878, at *4 (denying leave to amend because "further amendment at this stage would necessitate additional discovery and unfairly prejudice [defendant]").

In short, plaintiffs' motion should be denied because "[e]ssentially, the claims appear to commence a new lawsuit." *Smith*, 1997 WL 314737, at *1 (affirming denial of leave to amend).[6] There is no reason why at this late stage this new lawsuit involving an eight-year time period should be layered on to the existing litigation.

## II.  Plaintiffs' Motion For Leave To Amend Should Be Denied Because Plaintiffs Cannot Demonstrate Demand Futility With Respect To Their Proposed New Claims

Plaintiffs' motion for leave to amend also should be denied because plaintiffs cannot satisfy their burden of demonstrating demand futility with respect to their proposed new claims. While mindful of the Court's June 14, 2006 order ("June 14 Order") finding that plaintiffs had adequately pled demand futility with respect to their allegations relating to the TurboDisc restatement, defendants respectfully submit that plaintiffs do not come close to establishing demand futility with respect to their proposed new claims concerning Veeco's stock option grants.[7]

According to plaintiffs, Veeco's stock options were granted pursuant to stock incentive and stock option plans "administered by the Compensation Committee, which approved stock option grants."  Proposed SAC ¶ 113.  As the stock option grants at issue were made by Veeco's three-

---

[6]  By contrast, in *Accusan, Inc. v. Xerox Corp.*, 1998 WL 60991 (S.D.N.Y. Feb. 11, 1998) (*see* Ps' Br. at 5), the plaintiffs' proposed amendments did not assert new claims or add any new defendants, but only sought to clarify that the patent at issue "applies not only to facsimile machines but to scanning/copier systems as well." *Id.* at *1 n.1.  Plaintiffs here are not seeking to clarify any existing claims.  Plaintiffs' reliance on *Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fid., Ltd.*, 689 F. Supp. 1340 (S.D.N.Y. 1988) (*see* Ps' Br. at 5) is also misplaced. In *Maritime Ventures*, the plaintiff sought to amend only to assert a new claim based on existing factual allegations. *Id.* at 1357.  Plaintiffs here are not relying on existing factual allegations.  Rather, plaintiffs are seeking to add a host of new claims and new defendants based on entirely new and different factual allegations spanning a far longer time period.

[7]  As noted above, plaintiffs have not alleged any government investigation or any financial restatement relating to Veeco's stock option grants.

member Compensation Committee and not Veeco's entire board of directors, the applicable test for demand futility is the test set forth by the Delaware Supreme Court in *Rales v. Blasband*, 634 A.2d 927 (Del. 1993). *See In re Forest Labs., Inc. Derivative Litig.*, 450 F. Supp. 2d 379, 388 (S.D.N.Y. 2006). ("Where, as here, plaintiffs do not challenge a particular decision made by the board as a whole, the Court applies the test for demand futility as set forth in *Rales*."); *Rattner v. Bidzos*, 2003 WL 22284323, at *8 (Del. Ch. Oct. 7, 2003) (same).[8]

"Under the *Rales* test, a plaintiff must provide particularized allegations that create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *In re Forest*, 450 F. Supp. 2d at 388 (citing *Rales*, 634 A.2d at 934). "[T]he *Rales* test, in examining the 'interest' of the challenged directors, asks whether the directors face a '*substantial likelihood*' of personal liability." *Rattner*, 2003 WL 22284323, at *12 (emphasis added). Thus, to establish demand futility with respect to their proposed new claims, plaintiffs must make particularized factual allegations creating a reasonable doubt as to the disinterestedness and independence of at least five of Veeco's board members. *See* June 14 Order, at 12.

Plaintiffs do not come close to satisfying their burden under *Rales*. Of the current members of Veeco's board of directors, only Edward Braun, Veeco's CEO, is identified as a defendant for plaintiffs' proposed new claims relating to Veeco's stock option grants. *See* Ps' Br. at 2 n.3. None of Veeco's other eight current directors – Richard D'Amore, Joel Elftmann, Heinz Fridrich, Douglas Kingsley, Paul Low, Roger McDaniel, Irwin Pfister or Peter Simone – are identified as proposed "Option Defendants." *See id.* Thus, there is no chance of a "substantial

---

8    "Pre-suit demand requirements, and the futility exceptions thereto, are governed by the law of the state of incorporation. Because Veeco is a Delaware corporation, Delaware's demand futility jurisprudence is controlling." June 14 Order, at 9.

likelihood of personal liability" on the part of a majority of Veeco's directors with respect to the proposed new options claims. *See In re Forest*, 450 F. Supp. 2d at 388-96 (dismissing derivative complaint for failure to establish "substantial likelihood of personal liability" with respect to a majority of the board); *Guttman v. Huang*, 823 A.2d 492, 504 (Del. Ch. 2003) (dismissing derivative complaint for failure to establish "substantial threat of liability" with respect to a majority of the board).

Moreover, far from providing particularized allegations indicating any wrongdoing by a majority of Veeco's directors, plaintiffs have done nothing more than proffer Veeco's publicly-disclosed stock option grants for certain years and speculate that there must have been backdating because the price of Veeco's stock rose following some of the stock option grants. *See* Proposed SAC ¶ 118. Plaintiffs' speculation is unfounded and unsupported by any well-pled facts. For example, plaintiffs' contention that Veeco's stock option grants in 2003 and 2004 were backdated is directly refuted by Form 4s that were filed publicly and contemporaneously with the 2003 and 2004 grants. *Compare* Form 4s filed by Don R. Kania and Anthony L. Martinez (Wallin Decl. Exs. L-M), *with* Proposed SAC ¶ 118(f) & (g). Obviously, if the Form 4s were filed *contemporaneously* with the stock option grants, the stock options could not have been backdated. It is incredible that plaintiffs have even attempted to concoct a claim with respect to the 2003 and 2004 stock option grants. As plaintiffs themselves acknowledge, the Sarbanes-Oxley Act of 2002 "amended a section of the Exchange Act and required insiders to file notification of grants within two business days of receipt." Proposed SAC ¶ 117.

Plaintiffs' proposed claims with respect to stock option grants made prior to 2003 are equally spurious. Plaintiffs do not identify any internal Veeco documents even remotely

indicating that any of the stock option grants about which they complain were backdated.[9]

Instead, plaintiffs again rely on nothing more than their speculation that there must have been

backdating because the price of Veeco's stock rose following some of the stock option grants. *See*

Proposed SAC ¶ 118.  That is patently insufficient:

> The Amended Complaint fails to allege any facts with particularity that would
> permit me to draw a reasonable inference that the challenged sales were executed
> upon the basis and because of non-public information.  Much is made about the
> timing and size of the sales.  However, as has been noted, the Amended
> Complaint does not assist in determining whether the pattern of executed trades
> was the product of an orchestrated scheme to defraud the market and the
> Company's shareholders.

*Rattner*, 2003 WL 22284323, at *12 (dismissing derivative complaint for failure to establish

substantial likelihood of personal liability with respect to insider trading claims).

As plaintiffs have failed to even provide particularized allegations indicating that any

backdating of options took place, plaintiffs' conclusory assertion that each of the members of

Veeco's Compensation Committee "faces a substantial likelihood of liability" (Proposed SAC

¶ 131(b)-(e)) rings hollow.  *See In re Forest*, 450 F. Supp. 2d at 389 ("Cursory allegations that a

director made sales of company stock in the market at a time when he possessed material,

nonpublic information are not sufficient to find a director interested for demand-futility

purposes.").[10]

---

[9]   In the intervening twenty months between the filing of plaintiffs' original complaints and the
filing of their motion to amend, plaintiffs did not once make a request to review Veeco's books
and records relating to stock option grants pursuant to Section 220 of the Delaware General
Corporation Law.  As courts have made clear, conclusory allegations of would-be derivative
plaintiffs who have "ignored the repeated admonitions of the Delaware Supreme Court and
Chancery Court to proceed deliberately and to use the books and records device [of Section
220]" should be rejected.  *In re Forest*, 450 F. Supp. 2d at 394 (dismissing derivative action).

[10]  In the absence of particularized allegations indicating that the backdating of options took
place, plaintiffs' conclusory assertion that "the misconduct complained of herein was not, and

[Footnote continued on next page]

Plaintiffs' bald assertion that each of the members of Veeco's Audit Committee "faces a substantial likelihood of liability" (Proposed SAC ¶ 131(b)-(h)) is equally insufficient. Plaintiffs do not allege that Veeco's Audit Committee was responsible for administering the Company's stock option grants and do not identify any "red flags" relating to the option grants or the accounting for the option grants that were brought to the attention of Veeco's Audit Committee, but ignored. *See Stone v. Ritter*, 2006 WL 302558, at *2 (Del. Ch. Jan. 26, 2006), *aff'd*, 2006 WL 3169168 (Del. Nov. 6, 2006) ("[P]laintiffs contend that the board was not disinterested and independent because the defendants 'face a substantial likelihood of liability' for their failure to implement adequate internal controls. Plaintiffs' complaint is devoid of the particularized allegations of fact needed to tie the defendants to any of the alleged wrongdoing. Plaintiffs fail to point to any facts either showing how the Hamric and Nance scheme, or any other problems at AmSouth, waved a 'red-flag' in the face of the board. Nor do plaintiffs point to facts suggesting a conscious decision to take no action in response to red flags. Without these well-pled allegations, there is no possibility the defendants faced a substantial likelihood of liability.").

Indeed, the Proposed Second Amended Complaint "is empty of the kind of fact pleading that is critical . . . such as contentions that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities

---

[Footnote continued from previous page]

could not have been, an exercise of good faith business judgment" (Proposed SAC ¶ 135) likewise rings hollow. *See Aronson v. Lewis*, 473 A.2d 805, 817 (Del. 1984) ("Plaintiff's claim falls in its initial premise. The complaint does not allege particularized facts indicating that the agreement is a waste of corporate assets. . . . Plaintiff has not alleged facts sufficient to render demand futile on a charge of corporate waste, and thus create a reasonable doubt that the board's action is protected by the business judgment rule.").

[relating to the alleged option backdating] and simply chose to ignore them or, even worse, to encourage their continuation." *Guttman*, 823 A.2d at 507.

Plaintiffs' self-serving assertion that the members of Veeco's Compensation and Audit Committees engaged in "egregious breach of duties" (Proposed SAC ¶¶ 132-33) adds nothing. *See Caviness v. Evans*, 229 F.R.D. 354, 359 (D. Mass. 2005) ("[W]hile McArdle served on the Audit Committee from fiscal years 2000 through 2004, Plaintiff's conclusory allegation that McArdle breached her supervisory duties, without more, fails to raise a reasonable doubt that McArdle is interested.").

In sum, plaintiffs' Proposed Second Amended Complaint fails to provide well-pled facts indicating that any backdating of options took place, much less particularized allegations giving rise to a substantial likelihood of personal liability on the part of a majority of Veeco's directors. Moreover, as none of Veeco's eight outside directors are named as "Option Defendants," there is not even a remote doubt, much less a reasonable doubt, as to the disinterestedness and independence of a majority of Veeco's board of directors with respect to plaintiffs' proposed new claims.

### III.    Plaintiffs' Motion For Leave To Amend Should Be Denied Because Plaintiffs' Proposed New Claims Fail As A Matter Of Law

Plaintiffs' motion for leave to amend also should be denied because plaintiffs' proposed new claims fail as a matter of law and would not survive a Rule 12(b)(6) motion to dismiss. *See Acito v. Imcera Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) ("One good reason to deny leave to amend is when such leave would be futile.").

### A.    All Of Plaintiffs' Proposed Claims, Insofar As They Relate To The 2003 And 2004 Stock Option Grants, Are Directly Refuted By Public SEC Filings

As discussed in Point II above, Form 4s filed publicly and *contemporaneously* with the 2003 and 2004 stock option grants about which plaintiffs complain directly refute plaintiffs' spurious contention that those grants were "improperly backdated . . . to make it appear as though the grants were made on dates when the market price of Veeco stock was lower than the market price on the actual grant dates." Proposed SAC ¶ 119. *Compare* Form 4s filed by Don R. Kania and Anthony L. Martinez (Wallin Decl. Exs. L-M), *with* Proposed SAC ¶ 118(f) & (g).

Because plaintiffs' allegations are directly refuted by public SEC filings, all of plaintiffs' proposed claims to the extent they are based on the 2003 and 2004 stock option grants (Proposed SAC Counts IV-XI) would fail as a matter of law. *See Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) ("This Court finds that the documents contradict Plaintiffs' allegations and, therefore, this Court must grant Defendants' motion to dismiss."). Plaintiffs' motion to amend to add "Stock Option Claims" relating to the 2003 and 2004 time period therefore should be denied. *See Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000) (denying leave to amend because "Count I of the proposed second amended complaint . . . is legally insufficient").

### B.    All Of Plaintiffs' Proposed Claims, Insofar As They Relate To Stock Option Grants Made Prior To 2003, Are Time-Barred

To the extent plaintiffs' eight proposed "Stock Option Claims" (Counts IV through XI) are based on stock option grants made prior to 2003, they are time-barred. Plaintiffs' proposed claims concern alleged "breaches of fiduciary duties of good faith, fair dealing, and loyalty" in connection with alleged violations of "Veeco's publicly disclosed, shareholder-approved stock option plans."

Ps' Br. at 4.[11] "Under Delaware law, a three-year statute of limitations applies to claims for breach of contract or breach of fiduciary duty." *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999) (citing 10 Del. C. § 8106). *See also Krahmer v. Christie's Inc.*, 903 A.2d 773, 783 (Del. Ch. 2006) (applying three-year statute of limitations to constructive fraud claim); *Ruggerio v. Estate of Poppiti*, 2005 WL 517967, at *4 (Del. Ch. Feb. 23, 2005) (applying three-year statute of limitations to accounting claim); *In re MAXXAM, Inc./Federated Development Shareholders Litig.*, 1995 WL 376942, at *6 & n.4 (Del. Ch. June 21, 1995) (applying three-year statute of limitations in derivative action seeking rescission).

The three-year statute of limitations on plaintiffs' proposed "Stock Option Claims" relating to stock option grants made prior to 2003 began to run at the latest on the dates on which Veeco filed its annual proxy statements disclosing the information about stock option grants on which plaintiffs now rely. Plaintiffs do not identify any stock option grants in 2002 that they contend were backdated. *See* Proposed SAC ¶ 118. The statute of limitations on plaintiffs' claims relating to the stock option grants made in 2001 (Proposed SAC ¶ 118(e)) began to run on April 9, 2002,

---

[11] The law of Delaware, Veeco's state of incorporation, applies to the proposed "Stock Option Claims" based on alleged breaches of fiduciary duty (Proposed SAC Counts IV, V, VI, VII, VIII, IX) because "a federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits" and "New York law dictates that the law of the state of incorporation governs an allegation of breach of fiduciary duty." *Walton v. Morgan Stanley & Co. Inc.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980). *See also Clark v. Nevis Capital Management, LLC*, 2005 WL 488641, at *19 (S.D.N.Y. Mar. 2, 2005) (applying Maryland's three-year statute of limitations to claims asserted against directors of Maryland corporation); *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 69 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) (applying Delaware law to breach of fiduciary duty claim and aiding and abetting breach of fiduciary duty claim asserted against directors of Delaware corporation). Delaware law applies to the proposed "Stock Option Claims" based on alleged violations of Veeco's stock option plans (Proposed SAC Counts X, XI) because those plans expressly provide for the application of Delaware law. *See* Veeco's 2000 Stock Incentive Plan ¶ 9(g) (Wallin Decl. Ex. N); Veeco's 1994 Stock Option Plan for Outside Directors ¶ 6.2(a) (Wallin Decl. Ex. O); Veeco's 1992 Amended and Restated Employees' Stock Option Plan ¶ 17 (Wallin Decl. Ex. P).

when Veeco filed its annual proxy statement disclosing the stock option grants for fiscal year 2001. Wallin Decl. Ex. H. Thus, the three-year statute of limitations for the latest of plaintiffs' claims relating to stock option grants made before 2003 expired on April 9, 2005. Plaintiffs, however, did not file their motion for leave to add new claims until November 7, 2006, or nineteen months after the three-year statute of limitations had run. Accordingly, plaintiffs' proposed claims relating to stock option grants made prior to 2003 are time-barred. *See In re Marvel Entertainment Group, Inc.*, 273 B.R. 58, 72-77 (D. Del. 2002) (finding breach of fiduciary duty claim time-barred under three-year statute of limitations).

Plaintiffs cannot invoke any tolling doctrines to salvage their proposed "Stock Option Claims" relating to stock option grants made before 2003 because, as discussed above, plaintiffs' proposed new claims are based on information that was disclosed in Veeco's public SEC filings. *See In re Marvel*, 273 B.R. at 76 ("[Delaware] courts have consistently rejected 'equitable tolling' of limitations period where the facts underlying the claims were disclosed in publicly filed documents"). Indeed, plaintiffs do not even attempt to plead specific facts, as would be their burden, to invoke tolling. *See In re MAXXAM*, 1995 WL 376942, at *6 ("A plaintiff who contends that the limitations period is tolled . . . has the burden of pleading specific facts that, if true, would establish tolling.").

Because all of plaintiffs' proposed claims relating to stock option grants made prior to 2003 are time-barred, plaintiffs' motion to amend to add "Stock Option Claims" (Proposed SAC Counts IV-XI) relating to the 1996 to 2002 time period should be denied. *See Kearney v. ABN AMRO, Inc.*, 2006 WL 2354819, at *7 (S.D.N.Y. Aug. 11, 2006) ("[B]ecause Plaintiff's Title VII claims . . . are time-barred, leave to amend is denied as futile.").

19

### C.    All Of Plaintiffs' Proposed Claims Based On Alleged Breaches Of Fiduciary Duty Fail As A Matter Of Law

As discussed in Point II above, plaintiffs have failed to provide well-pled facts indicating that any backdating of options took place, much less well-pled facts indicating that defendants had knowledge of any options backdating.  In the absence of any allegations of fact, rather than conclusions, indicating that defendants were aware of or deliberately disregarded red flags indicating options had been backdated, all of plaintiffs' proposed "Stock Option Claims" based on alleged breaches of fiduciary duty (Proposed SAC Counts IV, V, VI, VII, VIII, IX) are insufficient to state a claim.  *See Steed Finance LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 282 (S.D.N.Y. 2003) (dismissing aiding and abetting breach of fiduciary duty claim "for failure to adequately allege knowledge of the fraud"); *IOTEX Communications, Inc. v. Defries*, 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998) ("IOTEX contends the scant well-pleaded facts in its counterclaim support the conclusion that Maag knew that Defries and Iota were not acting in good faith in negotiating the Agreements.  I cannot agree.  *Speculative conclusions unsupported by fact do not allege breaches of fiduciary duty*.  For the same reason, I reject IOTEX's argument that Maag aided and abetted Defries' alleged breach of duty.") (emphasis added).

### D.    All Of Plaintiffs' Proposed Claims Based On Alleged Contractual Violations Fail As A Matter Of Law

In addition to being time-barred (*see* Point III.B. above), plaintiffs' proposed claims relating to alleged contractual violations (Proposed SAC Counts X, XI) – based on alleged contractual invalidity and breach of employment agreements – also are insufficient as a matter of law.  Each of these counts is based on alleged backdating of stock options.  Plaintiffs have failed to provide any well-pled facts indicating that any backdating of options took place and failed to provide any well-pled facts indicating that any defendant has exercised any allegedly backdated stock options.  In the absence of any allegations of fact, rather than conclusions, indicating that

stock options were backdated and that defendants exercised backdated stock options, plaintiffs' proposed "Stock Option Claims" based on alleged contractual violations (Proposed SAC Counts X, XI) are insufficient for failure to identify any factual basis for a contractual claim and failure to identify any damages caused by an alleged breach. *See Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 329 (S.D.N.Y. 2006). (dismissing breach of contract claim because "plaintiffs have not established that ABW breached any of the terms of its written contract"); *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 466, 474 (S.D.N.Y. 2005) (dismissing breach of contract claim for failure to identify a breach or damages); *Calabria v. Associated Hospital Serv.*, 459 F. Supp. 946, 949 (S.D.N.Y. 1978) ("in the absence of allegations of facts showing damages, allegations of a breach of a contract will not be sufficient to sustain a complaint").

### E.    Plaintiffs' Proposed Accounting Claim Fails As A Matter Of Law

Plaintiffs' proposed equitable claim for accounting (Proposed SAC Count IV) also fails as a matter of law because plaintiffs have failed to demonstrate that there is no adequate remedy at law.

An accounting claim cannot be maintained where there is an adequate remedy at law. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) ("The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law."); *Kaufman v. Guest Capital, L.L.C.*, 386 F. Supp. 2d 256, 274 (S.D.N.Y. 2005) ("Delaware law declines to provide a remedy in equity, such as a right to accounting where an adequate remedy at law exists."). "Delaware law provides a right to accounting only in the following circumstances: (1) where there are mutual account between the parties; (2) where the accounts are all on one side but there are circumstances of great complication; and, (3) where a fiduciary relationship exists between the parties and a duty rests upon defendant to render an account." *Kaufman*, 386 F. Supp. 2d at 274. There is no allegation

here of mutual accounts and there is "nothing to indicate the accounts between the parties are so complicated as not to be understood." *Id.* While fiduciary relationships are generally alleged, plaintiffs do not identify any fiduciary duty on the part of defendants to provide "the disposition of any proceeds received . . . via sale or other exercise" of stock options. Proposed SAC ¶ 160. Plaintiffs' motion for leave to add an accounting claim therefore should be denied because plaintiffs "do[] not seek an accounting so much as [they] seek[] discovery of the defendants' records in order that [they] may determine the amount of the money judgment to which [they] feel[] [themselves] entitled." *Kaufman*, 386 F. Supp. 2d at 275 (dismissing accounting claim).

### F.    Plaintiffs' Proposed Claim for Unjust Enrichment, Insofar As It Is Based On Alleged Backdating Of Stock Options, Fails As A Matter Of Law

To the extent the unjust enrichment claim in the Proposed Second Amended Complaint (Count III) is based in part on alleged backdating, it fails as a matter of law because plaintiffs have failed to demonstrate that there is no adequate remedy at law.[12] It is well established that "the existence of a valid and enforceable written contract ordinarily precludes recovery in quasi contract such as unjust enrichment." *Bazak Int'l Corp. v. Tarrant Apparel Group*, 247 F. Supp. 2d 1, 4 (S.D.N.Y. 2004). A plaintiff may simultaneously allege breach of contract and unjust enrichment claims "where there is a bona fide dispute as to the existence of a contract." *Id.* Plaintiffs here do not allege any dispute as to the existence of any contract and seek to assert claims based on contractual violations (Proposed SAC Counts X, XI). Plaintiffs' motion for leave

---

[12] Count III of the Proposed Second Amended Complaint is virtually identical to Count III of the First Amended Complaint, except that it would incorporate allegations concerning alleged backdating of stock options. *See* Proposed SAC ¶ 151. In addition, Plaintiffs purport to assert Count III of the Proposed Second Amended Complaint against two defendants (Mssrs. Braun and Scherr) that allegedly received backdated stock options.

to add an unjust enrichment claim therefore should be denied because "if a valid and enforceable contract between the parties exists, the claim for unjust enrichment cannot be maintained." *Bazak*, 247 F. Supp. 2d at 6. *See also Total Physicians, P.A. v. O'Hara*, 2002 WL 31667901, at *10 (Del. Super. Oct. 29, 2002) ("When a plaintiff may avail itself of an adequate remedy at law, this Court will not hear a claim sounding in unjust enrichment.").

## **CONCLUSION**

For all these reasons, defendants respectfully request that this Court deny plaintiffs' motion

for leave to amend and award such other and further relief as the Court deems appropriate.

Dated:   New York, New York
        November 22, 2006

GIBSON, DUNN & CRUTCHER LLP

By:  _____
    John A. Herfort (JH-1460)
    Robert F. Serio (RS-2479)
    Aric H. Wu (AW-0252)
    J. Ross Wallin (JW-3911)

200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendants

24