UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――x
IN RE VEECO INSTRUMENTS, INC.,         :   05-MD-1695 (CM)
SECURITIES LITIGATION                  :
―――――――――――――――――――――――x
THIS DOCUMENT RELATES TO:              :
―――――――――――――――――――――――x
AUGUST SCHUPP, III, derivatively on behalf of : 05-CV-10226 (CM)
VEECO INSTRUMENTS, INC.,               :
                                       :
            Plaintiff(s),              :
                                       :
      v.                               :
                                       :
EDWARD H. BRAUN, et al.,               :
                                       :
            Defendant(s),              :
―――――――――――――――――――――――x
DAVID ALTMAN, derivatively on behalf of : 05-CV-10225 (CM)
VEECO INSTRUMENTS, INC.,               :
                                       :
            Plaintiff(s),              :
                                       :
      v.                               :
                                       :
EDWARD H. BRAUN, et al.,               :
                                       :
            Defendant(s).              :
―――――――――――――――――――――――x

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION
FOR LEAVE TO AMEND THE CONSOLIDATED AMENDED VERIFIED
SHAREHOLDER DERIVATIVE COMPLAINT AND TO FILE A
<u>SECOND AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PROCEDURAL AND FACTUAL BACKGROUND................................................................... 1

DERIVATIVE PLAINTIFFS DID NOT UNDULY DELAY
FILING THE PROPOSED AMENDMENTS ............................................................................ 4

THE AMENDMENTS SOUGHT ARE NOT FUTILE................................................................. 5

PLAINTIFFS' SAC CREATES NO UNDUE PREJUDICE......................................................... 7

CONCLUSION ..................................................................................................................... 10

i

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir.1993) ........................................................................................ 7

*Commerce Funding Corp. v. Comprehensive Habilitation Servs.*,
  233 F.R.D. 355 (S.D.N.Y. 2005) ................................................................................. 5

*Friedman v. Consolidated Edison Co. of New York, Inc.*,
  No. 97 CIV. 2735, 1999 WL 182595 (S.D.N.Y. Mar. 31, 1999) ................................. 4

*H.L. Hayden Co. v. Siemend Medical Systems*,
  112 F.R.D. 417 (S.D.N.Y.1986) .................................................................................. 7

*Heinold Commodities, Inc. v. N.Y. Mercantile Exchange*,
  78 F.R.D. 190 (S.D.N.Y., 1978) .................................................................................. 9

*Imcera v. Imcera Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) ............................................................................................ 6

*Krumme v. Westpoint Stevens Inc.*,
  143 F.3d 71 (2d Cir.1998) ........................................................................................... 7

*Marvullo v. Gruner & Jahr*,
  105 F. Supp. 2d 225 (S.D.N.Y. 2000) ......................................................................... 5

*Middle Atlantic Utilities Co. v. S.M.W. Dev't Corp.*,
  392 F.2d. 380 (2d Cir. 1968) ....................................................................................... 9

*S.S. Silberblatt, Inc. v. East Harlem Pilot Block Bldg. 1 Housing Dev. Fund Co., Inc.*,
  608 F.2d 28 (2d Cir. 1979) .......................................................................................... 7

*SATCOM Int'l Group v. ORBCOMM Int'l Partners*,
  No. 98 CIV. 9095, 2000 WL 729110 (S.D.N.Y. June 6, 2000) .................................. 4

*Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.*,
  No. 03 Civ. 10254, 2006 WL 2786081 (S.D.N.Y. Sept. 26, 2006) ............................. 5

*Smith v. Cadbury Beverages, Inc.*,
  116 F.3d 466 (2d Cir. 1997) ........................................................................................ 7

*In re Teligent, Inc.*,
  346 B.R. 73 (S.D.N.Y. 2006) ...................................................................................... 7

*United States v. I.B.M. Corp.*,
  66 F.R.D. 223 (S.D.N.Y. 1975) ................................................................................... 9

*In re Veeco Instruments, Inc. Sec. Litig.*,
  434 F. Supp.2d 267 (S.D.N.Y. 2006) .......................................................................... 6

*In re Walt Disney Derivative Litig.*,
  825 A.2d 275 (Del. Ch. 2003) ................................................................................. 6, 8

| | |
|---|---|
| **Statutes, Rules and Regulations** | Page(s) |

Federal Rules of Civil Procedure
   Rule 8 .................................................................................................................... 5
   Rule 15 ............................................................................................................... 5, 6
   Rule 23.1 ............................................................................................................... 5

**Other Authorities**

*Quit After Internal Options Probe*,
   Wall Street Journal, Nov. 27, 2006 ...................................................................... 2

*The Perfect Payday: Some CEOs Reap Millions By Landing Stock Options When They Are Most Valuable: Luck-Or Something Else?*
   Wall Street Journal - March 18, 2006................................................................... 1

Plaintiffs David Altman and August Schupp, III (the "Derivative Plaintiffs") respectfully submit this reply memorandum in further support of their motion for leave to amend and file a second amended verified shareholder derivative complaint.

## PROCEDURAL AND FACTUAL BACKGROUND

This shareholder derivative action (the "Action") was filed in March 2005 by the Derivative Plaintiffs on behalf of Veeco Instruments, Inc. ("Veeco" or the "Company") for breach of fiduciary duties, waste of corporate assets, and unjust enrichment relating to Veeco's acquisition of the TurboDisc unit from Emcore Corporation in late 2003. ¶¶1-9.[1]  A year later, on March 18, 2006, the *Wall Street Journal* (the "Journal") published a groundbreaking article entitled *The Perfect Payday: Some CEOs Reap Millions By Landing Stock Options When They Are Most Valuable: Luck-Or Something Else?* ¶111.[2]

The Journal's article publicly exposed a longtime, widespread, illicit practice of stock option manipulation (often referred to as "backdating") at a number of public companies.  *Id.*[3] The Journal's article subsequently touched off a national scandal.  Since that publication, more than 130 public companies have come under scrutiny by federal prosecutors and regulators over

---

[1] All "¶" and "¶¶" references are to Derivative Plaintiffs' Proposed Consolidated Second Amended Verified Shareholder Derivative Complaint (the "SAC"), filed on November 7, 2006. Derivative Plaintiffs' Consolidated Amended Verified Shareholder Derivative Complaint is hereinafter referred to as the "FAC," and the opening brief in support of their motion to amend is referred to as "DPOB."

[2] A copy of this article is attached as Exhibit A to the Declaration of Shane T. Rowley in further support of the motion to amend, submitted herewith.  All such attachments are hereinafter referred to as "Rowley Decl. Ex. ___."

[3] As United States Securities and Exchange Commission ("SEC") Chairman Christopher Cox recently testified before Congress, this "low-tech" scheme is accomplished by changing the purported date of an option grant to a date when the corporation's stock price is lower than that the date of the option award.  The scheme is "low-tech" because an unscrupulous executive can backdate an option by changing the relevant date on a simple form.

option grant practices. *See* Rowley Decl. Ex. B (*Bandler, et al.*, *ACS Officers Quit After Internal Options Probe*, Journal, Nov. 27, 2006, at A3). As of the filing of this brief, more than sixty senior corporate executives have either stepped down or were forced out of their positions. *Id.*

The public outrage that accompanied this national scandal shed further light on the alleged known deficiencies regarding Veeco's internal controls, the subject of the Action. As a result, in early summer 2006, the Derivative Plaintiffs and their counsel, in consultation with financial experts, commenced a review of Veeco's historical stock option grant practices. This investigation uncovered the extraordinary pattern set forth in the SAC.

In the midst of the investigation, Derivative Plaintiffs' counsel was informed on or around July 27, 2006 by counsel to the securities plaintiffs that defendants had proposed a mediation to settle the coordinated securities action as well as this Action.[4] In response, Derivative Plaintiffs' counsel proposed a thorough outline of corporate therapeutic suggestions for defense counsel's review prior to mediation. Not surprisingly, these documents included a provision relating to Derivative Plaintiffs' then-pending investigation of defendants' alleged backdating practices.

Counsel to the Derivative Plaintiffs never received a response from defense counsel with respect to its proposed settlement, let alone an acknowledgment of its proffer. Moreover, on the first day of the mediation, Derivative Plaintiffs' counsel did not even have an opportunity to meet with defense counsel and the mediator, the Honorable Nicholas J. Politan. In fact, Judge Politan

---

[4] Although counsel to the Derivative Plaintiffs was not privy to any discussion of the proposal, they were included in the effort and consequently set about preparing for the mediation.

told counsel for the Derivative Plaintiffs to skip the second day of the mediation, as the parties to the securities action made no forward progress toward settlement.[5]

While the parties to the Action never had a realistic opportunity to successfully resolve the Action, let alone a response to Derivative Plaintiffs' invitation to discuss the suggested settlement provisions proffered before mediation, Derivative Plaintiffs completed their investigation of Veeco's option backdating practices. On November 7, 2006, Derivative Plaintiffs filed their motion to amend the FAC, asserting new causes of action arising from the fruits of their investigation.

As alleged in the SAC, at Veeco backdated and/or otherwise manipulated options were granted from 1996-2004 pursuant to the Company's shareholder-approved 2000 Stock Incentive Plan and 1994 Stock Option Plan for Outside Directors (collectively, the "Plans"). SAC ¶113. According to their terms, the Plans are administered by the Compensation Committee, which approved stock option grants and supervised the administration of the Plans. *Id.* Under the terms of the Plans, "stock options are granted at an exercise price equal to fair market value on the date of grant." *Id.*

Contrary to the foregoing public disclosures, the options granted under the Plans were not granted at the "fair market value" on the date of grant. ¶116. In many instances, the grant dates were allegedly dated just before a sharp increase in the trading price of Veeco stock or at the bottom of a steep drop in stock's price, resulting in windfalls to their recipients at the expense of the Company and its shareholders. *Id.*

---

[5] The timing of the proposed mediation is questionable at best. A letter informing the Court of its occurrence accompanied a proposed revised scheduling stipulation extending the discovery cut-off dates, which the Court signed. *See* Rowley Decl. at Ex. C.

3

Options priced below the stock's fair market value when they are awarded bring the recipient an instant paper gain. ¶121. Under applicable accounting rules, this additional compensation is treated as a cost to the Company. ¶120. Veeco did not account for these windfall expenses as costs. Consequently, defendants' conduct, described herein and alleged in detail in the SAC, inevitably contributed to Veeco's material overstatement its publicly reported financial results. *Id*.

## DERIVATIVE PLAINTIFFS DID NOT UNDULY DELAY FILING THE PROPOSED AMENDMENTS

Fact discovery does not end till January 31, 2007. To date, the parties to the coordinated actions are merely in the process of setting up their deposition schedule. Defendants' attempt to emphasize how far along the parties are in discovery should be disregarded. Moreover, as set forth in Derivative Plaintiffs' opening motion, the relief sought herein is far from dilatory. *See* DPOB at 6-7.[6]

However, even if Derivative Plaintiffs unduly delayed filing their motion to amend, which they have not, this finding alone is insufficient to deny relief. Although undue delay is a factor to be considered, "[m]ere delay, unaccompanied by an additional basis for denial, does not

---

[6] Defendants cite *SATCOM Int'l Group v. ORBCOMM Int'l Partners*, No. 98 CIV. 9095, 2000 WL 729110 (S.D.N.Y. June 6, 2000), to no avail. In that case, a summary judgment motion was pending after the completion of fact discovery and a preliminary injunction hearing had been held. During the hearing, plaintiffs raised new claims, and the Court specifically advised against alleging these new claims because plaintiffs had "neither amended nor sought leave to amend the original complaint." *Id.* at *24-25. Plaintiffs then sought leave to amend *after* the hearing despite the Court's advisement. *Friedman v. Consolidated Edison Co. of New York, Inc.*, No. 97 CIV. 2735, 1999 WL 182595 (S.D.N.Y. Mar. 31, 1999), another case cited by defendants, was also in a different procedural posture than this case: fact discovery was complete, and the parties had filed cross motions for summary judgment. The *Friedman* court was hesitant to reopen discovery at that stage, which is not a concern, here, because the parties are only midway through the fact-gathering stage. *Id.* at *2.

warrant denying a request for leave to amend." *Commerce Funding Corp. v. Comprehensive Habilitation Servs.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005). Defendants must additionally show bad faith conduct on the part of the plaintiffs. Defendants' bare assertion that the information on which the new allegations are based was publicly available fails to meet this burden. *See* Defs. Br. at 8. More is necessary under the Rule 15 standard.[7]

### THE AMENDMENTS SOUGHT ARE NOT FUTILE

As demonstrated in Derivative Plaintiffs' moving memorandum (DPOB at 6-7), the new claims based on options backdating are sufficiently pleaded and therefore are not futile. The new allegations identify the specific option plans under which grants were made and the specific terms by which the grants were to be exercised. The timing of the grant issuance immediately prior to a sharp increase in Veeco's stock price and the names of officers unjustly enriched were specifically alleged in the SAC. Plaintiffs therefore have met Fed. R. Civ. P. Rule 8's notice pleading standard, Rule 15's liberal amendment standard, and the particularized allegation standard of Rule 23.1.

Defendants, however, contend that Derivative Plaintiffs' motion should be denied because they cannot demonstrate demand futility, and the claims fail as a matter of law. Defendants' response lacks merit, and amendment should be permitted.

First, it should be noted that Derivative Plaintiffs are not seeking to resurrect a dismissed complaint by re-working original allegations. This is not an action like *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225 (S.D.N.Y. 2000), cited by defendants, where the initial complaint was

---

[7] The mere fact of delay does not imply bad faith. *See, e.g.*, *Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.*, No. 03 Civ. 10254, 2006 WL 2786081 at * 2 (S.D.N.Y. Sept. 26, 2006) (finding delay of 18 months was dilatory because it was not verified and pursued sooner, but "the mere fact of delay does not necessarily imply bad faith.").

5

dismissed for legal insufficiency, and the Court found the amended complaint also legally insufficient. The same was also the case in *Imcera v. Imcera Group, Inc.,* 47 F.3d 47 (2d Cir. 1995), another dismissed complaint that failed resurrection. Here, after the Court sustained the FAC, Derivative Plaintiffs learned of new facts that, giving rise to new allegations, add to their original claims of legally inadequate board oversight.

Second, even though it might be appropriate for a court to deny amendment because of legal insufficiency, defendants fall far short of that mark in making that claim. Although defendants couch their arguments in the form of legal insufficiency, what they have in fact done is make factual arguments proper only on summary judgment.[8] At the appropriate time, after full discovery, Derivative Plaintiffs will respond to these arguments, should the defendants still seek to proffer them.[9] As the Second Circuit has stated, "where, as here, the alleged futility of the amendment rests on findings of fact, we prefer to let the district court resolve the factual issues ...

---

[8] In essence, defendants have responded to Derivative Plaintiffs' motion with a motion for summary judgment, taking issue with allegations in the SAC and drawing all inferences in their favor, by rewriting its allegations. As set forth below, Derivative Plaintiffs will respond to these arguments when they are procedurally ripe.

[9] Even if Derivative Plaintiffs had to respond to merit-based arguments on a Rule 15 motion, the argument regarding demand futility is a nonstarter. In the decision denying defendants' motion to dismiss, the Court concluded that the allegations, taken as a whole and drawing all reasonable inferences in Derivative Plaintiffs' favor, created "a reasonable doubt as to the disinterestedness of six of Veeco's ten board members," making futile any demand. *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp.2d 267, 275 (S.D.N.Y. 2006) (referring to the five members of the audit committee and defendant Braun). The new claims similarly implicate six of the ten board members, defendants Braun and Scherr, as recipients of the windfall from backdating the option grants, and the members of the compensation committee that approved the grants, defendants D'Amore, Low, McDaniel and Elftmann. If Derivative Plaintiffs are permitted to advance these claims, they shall prove that the act of approving these compensation practices implicated not just gross negligence on the part of the compensation committee, and the Board by extension, but that they "failed to exercise *any* business judgment and failed to make *any* good faith attempt to fulfill their fiduciary duties . . .." *See In re Walt Disney Derivative Litig.*, 825 A.2d 275, 278 (Del. Ch. 2003).

in ... a motion for summary judgment." *S.S. Silberblatt, Inc. v. East Harlem Pilot Block Bldg. 1 Housing Dev. Fund Co., Inc.,* 608 F.2d 28, 42 (2d Cir. 1979).

Accordingly, Derivative Plaintiffs respectfully submit their motion to amend should be granted and these factual issues raised by defendants await determination when ripe for resolution. If, however, the Court elects to consider the underlying merits of these factual issues at this time and finds the allegations inadequately pleaded, Derivative Plaintiffs respectfully request leave to re-plead these new allegations in a new complaint, or, in the alternative, to sever the new allegations for a separate trial.

### **PLAINTIFFS' SAC CREATES NO UNDUE PREJUDICE**

Filing the SAC does not prejudice defendants. Undue prejudice results where, among other things, the new claim would force plaintiff to expend additional resources in conducting discovery and preparing for trial or delay the underlying dispute's resolution. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993). As set forth above, the parties are merely midway through the fact-gathering stage, and the new claims are discrete, requiring no additional expense as the Derivative Plaintiffs proceed.

Defendants' assertions of undue prejudice are without merit.[10] *Cf. Krumme v. Westpoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir.1998) (quoting *H.L. Hayden Co. v. Siemend Medical Systems*, 112 F.R.D. 417, 419 (S.D.N.Y.1986)) (An "[a]mendment is especially prejudicial when discovery has been completed and a summary judgment motion has been filed by the defendant).

---

[10] Defendants' authority is distinguishable on this basis alone. *Smith v. Cadbury Beverages, Inc.*, 116 F.3d 466 (2d Cir. 1997) and *In re Teligent, Inc.*, 346 B.R. 73, 77 (S.D.N.Y. 2006) are cases where the deadline for fact discovery had already passed. The *Teligent* Court, in particular, had already previously granted a request by plaintiffs to re-open discovery. Requests for leave to amend in both cases had also arisen while summary judgment motions were pending.

7

Defendants forget that not one deposition has been conducted in this case. The start date for trial, let alone the deadline for summary judgment motions, is not even remotely implicated in the relief sought.

Defendants' other argument that the SAC presents new claims unrelated to the existing claims, thereby prejudicing them, also fails. These new claims are merely part of the larger pattern and practice by defendants to fail to monitor the activities and responsibilities *it* delegated to its compensation committee just as *it* did with respect to the audit committee, accepting without question or inquiry the financial results the Company publicly reported, which the audit committee was authorized to approve. The Board passively acquiesced to the decisions by the compensation committee that consisted of, among other things, the manipulation of option grants. *See, e.g., Walt Disney*, 815 A.2d at 288 (referring to the "ostrich-like approach" the directors took with respect to their review of the decision to grant Ovitz a non-fault termination). This conduct signals a breach of care that Derivative Plaintiffs have asserted the right to pursue while they pass through the discovery stage.

Meanwhile, defendants complain about the eight new named defendants but fail to acknowledge that two have already been named in the FAC. The proposed SAC has not asserted any other new claims other than very discrete allegations relating to option-grant practices. As defendants note, the information regarding the Company's stock option practices was public. Defendants knew of Derivative Plaintiffs' inquiry into the Company's option-granting practices when they received the Derivative Plaintiffs' corporate therapeutic suggestions including that the Company investigate its stock option granting practices. Defendants now merely feign surprise at the so-called new-ness of the allegations.

8

However, even if the Court acknowledges defendants' argument, these are insufficient grounds for denying leave to amend. *See Middle Atlantic Utilities Co. v. S.M.W. Dev't Corp.*, 392 F.2d. 380 (2d Cir. 1968) (holding that the "burden of further discovery and motions is not a satisfactory basis to deny the motion to amend discovery" and finding "resulting prejudice inadequate to support denial of the motion" since "no evidence was presented regarding the difficulty of acquiring further information.")[11] Also, not only is additional discovery not undue prejudice, but it is not the typical basis upon which a court would deny a motion for leave to amend based on prejudice grounds.[12]

Defendants have not asserted the proposed amendments would impede its ability to litigate the merits or impair its presentation of evidence. Instead, defendants claim the amendments will delay trial and burden them with additional discovery. In other words, the prejudice defendants assert is in the potential delay of the resolution of claims made against them. While a defendant may have an interest in the prompt resolution of an action, that "interest does not give rise to the type of prejudice which is the basis for denying leave to amend." *Id.* at 230.

Derivative Plaintiffs submit that the Action should be litigated as a unit to avoid wasting judicial resources and to expedite a speedy resolution. The addition of option backdating

---

[11] *See also Heinold Commodities, Inc. v. N.Y. Mercantile Exchange*, 78 F.R.D. 190, 191 (S.D.N.Y., 1978) (holding that "the possibility that [Defendant] may be compelled to conduct further discovery is insufficient to defeat amendment"); *United States v. I.B.M. Corp.*, 66 F.R.D. 223, 230 (S.D.N.Y. 1975) (needing additional preparation at trial and additional discovery insufficient prejudice to deny motion to amend).

[12] Courts denying leave to amend on "the ground of prejudice to the opposing party have focused their analysis on prejudice to the party's ability to litigate the merits of its case." *I.B.M.*, 66 F.R.D. 223, 230. Courts have further denied motions to amend for undue prejudice where "the effect of the amendment is to impair the opposing party's ability to present evidence." *Id.*

allegations will not extend the duration of the litigation. However, even if it did, the governing caselaw provides that such an extension is not a sufficient reason to deny a motion to amend. Defendants fail to adequately show why the SAC creates undue prejudice.

## CONCLUSION

For the foregoing reasons, Derivative Plaintiffs' motion should be granted.

Dated: December 1, 2006                    Respectfully submitted,


  s/Shane T. Rowley
Shane T. Rowley (SR-0740)
Nadeem Faruqi (NF-1184)
Jamie R. Mogil
**FARUQI & FARUQI**
320 East 39th Street
New York, NY 10016
Telephone: (212) 983-9330

Robert I. Harwood (RH-3286)
Samuel K. Rosen (SR-3287)
Jennifer K. Hirsh
**WECHSLER HARWOOD LLP**
488 Madison Avenue
New York, NY 10022
Telephone: (212) 935-7400

Robert B. Weiser (Of Counsel)
Brett D. Stecker (Of Counsel)
**THE WEISER LAW FIRM, P.C.**
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone: (610) 225-2616

Paul J. Scarlato (pro hac vice) (PS-3007)
Brian D. Penny (pro hac vice) (BP-4301)
**GOLDMAN SCARLATO & KARON, P.C.**
101 West Elm Street, Suite 360
Conshohocken, PA 19428
Telephone: (484) 342-0700

*Counsel for Plaintiffs*