# Exhibit O

VEECO INSTRUMENTS INC.
1994 STOCK OPTION PLAN
FOR OUTSIDE DIRECTORS

1.  **Purpose; Definitions.**

The purpose of the Plan is to increase the proprietary and vested interest of the Non-Employee Directors of the Company in the growth and performance of the Company by granting them Options.

Whenever the following terms are used in the Plan, they shall have the meaning specified below unless the context clearly indicates to the contrary.

"**Board**" shall mean the Board of Directors of the Company.

"**Code**" shall mean the Internal Revenue Code of 1986, as amended from time to time.

"**Company**" shall mean Veeco Instruments Inc., a Delaware corporation, and any successor corporation.

"**Exchange Act**" shall mean the Securities Exchange Act of 1934, as amended.

"**Fair Market Value**" per Share as of a particular date shall mean:

(i) the closing sales price per Share on a national securities exchange for the last preceding date on which there was a sale of Shares on such exchange;

(ii) if clause (i) does not apply and the Shares are then quoted on the National Association of Securities Dealers Automated Quotation system (known as "NASDAQ"), the closing price per Share as reported on such system for the last preceding date on which a sale was reported;

(iii) if clause (i) or (ii) does not apply and the Shares are then traded on an over-the-counter market, the average of the closing bid and asked prices for the Shares in such over-the-counter market for the last preceding date on which such bid and asked prices were quoted; or

(iv) if the Shares are not then listed on a national securities exchange or traded in an over-the-counter market, such value as the Board in its discretion may determine.

"Non-Employee Director" shall mean a director of the Company who is not an employee of the Company or a Subsidiary and has not, within one year immediately preceding the determination of such director's eligibility, received any award under any plan of the Company or a Subsidiary that entitles the participants therein to acquire stock, stock options or stock appreciation rights of any such company (other than any other plan under which participants' entitlements are governed by provisions meeting the requirements of Rule 16b-3(c)(2)(ii) promulgated under the Exchange Act).

"Option" shall mean an option to purchase Shares granted pursuant to the Plan. Options granted under the Plan are

not intended to be "incentive stock options" within the meaning of Section 422 of the Code.

"Option Agreement" shall mean an Option Agreement to be entered into between the Company and an Optionee, which shall set forth the terms and conditions of the Options granted to such Optionee, and shall be substantially in the form attached hereto as Exhibit A.

"Optionee" shall mean a Non-Employee Director to whom an Option has been granted pursuant to the Plan.

"Plan" shall mean this Veeco Instruments Inc. 1994 Stock Option Plan for Outside Directors, as hereinafter amended from time to time.

"Related Entity" shall mean a Subsidiary or any employee benefit plan (including a trust forming a part of such Plan) maintained by the Company or a Subsidiary.

"Securities Act" shall mean the Securities Act of 1933, as amended.

"Share" shall mean a share of the Company's Common Stock, .01 par value.

"Subsidiary" shall mean any corporation in an unbroken chain of corporations beginning with the Company, if each such corporation (other than the last corporation in the unbroken chain), or if each group of commonly controlled corporations, then owns fifty percent (50%) or more of the total combined voting power in one of the other corporations in such chain.

301

2.  **Shares Subject to the Plan.**

2.1 **Shares Subject to Plan**

The maximum number of Shares that may be issued or transferred pursuant to Options under this Plan shall be [_____]. The Company shall reserve such number of Shares for the purposes of the Plan, out of its authorized but unissued Shares or out of Shares held in the Company's treasury, or partly out of each. If any Shares that have been subject to an Option cease to be subject thereto, such Shares may again be the subject of Options hereunder.

2.2 **Changes in Company's Shares**

In the event that the outstanding Shares are hereafter changed into or exchanged for a different number or kind of shares or other securities of the Company, or of another corporation, by reason of reorganization, merger or other subdivision, consolidation, recapitalization, reclassification, stock split, issuance of warrants or rights, stock dividend, combination of shares or similar event, appropriate adjustments shall be made by the Board in the number and kind of Shares subject to and which may be subject to Options under this Plan, and the purchase price per Share, to prevent dilution or enlargement of the benefits granted to, or available for, Optionees, including adjustments to the maximum number and kind of shares which may be issued hereunder as Shares as set forth in Section 2.1.

302

3. **Eligibility for Option Grants.**

Any Option granted to any Non-Employee Director prior to the date of the adoption of this Plan shall be deemed to have been granted under this Plan and shall be subject to the terms and conditions set forth herein. Any individual who is elected or appointed to the office of director as a Non-Employee Director after the date of the adoption of this Plan shall receive an Option to purchase 10,000 Shares as of the date of the first meeting of the Board which such individual attends in such capacity. Each Non-Employee Director shall, upon re-election to the Board, receive an Option to purchase such [_____] Shares.

4. **Terms of Options and Shares.**

4.1 **Option Agreement**

Options shall be granted only pursuant to an Option Agreement, which shall be executed by the Optionee and an authorized officer of the Company and which shall contain such terms and conditions as the Board shall determine, consistent with the Plan.

4.2 **Terms**

The Options granted hereunder shall have the following terms and conditions:

(a) **Price.** The purchase price for the Shares subject to an Option shall be one hundred percent (100%) of the Fair Market Value of a Share as of the date the Option is granted.

(b) <u>Term</u>. The term of an Option shall be ten years from the date that it is granted.

(c) <u>Termination of Service as Non-Employee Director</u>. If an individual ceases to be a Non-Employee Director for any reason then all outstanding Options held by such Optionee shall remain exercisable for 90 days following such event. Thereafter, such Options shall terminate.

4.3 <u>Non-Transferability</u>

No Option granted under the Plan shall be transferable by the Optionee to whom granted otherwise than by will or the laws of descent and distribution, and an Option may be exercised during the lifetime of such Optionee only by the Optionee or his guardian or legal representative. The terms of such Option shall be binding upon the beneficiaries, executors, administrators, heirs and successors of the Optionee.

4.4 <u>Method of Exercise</u>

The exercise of an Option shall be made only by a written notice delivered in person or by mail to the Secretary of the Company at the Company's principal executive office, specifying the number of Shares to be purchased and accompanied by full payment therefor and otherwise in accordance with the Option Agreement pursuant to which the Option was granted. The purchase price for any Shares purchased pursuant to the exercise of an Option shall be paid in full upon such exercise in cash, by check or, at the discretion of the Board and upon such terms and conditions as the Board shall approve, by transferring previously

owned Shares to the Company, having Shares withheld or exercising pursuant to a "cashless exercise" procedure, or any combination thereof. Any Shares transferred to the Company as payment of the purchase price under an Option shall be valued at their Fair Market Value on the day preceding the date of exercise of such Option. If requested by the Board, the Optionee shall deliver the Option Agreement evidencing the Option to the Secretary of the Company who shall endorse thereon a notation of such exercise and return such Option Agreement to the Optionee. Not less than one hundred (100) Shares may be purchased at any time upon the exercise of an Option unless the number of Shares so purchased constitutes the total number of Shares then purchasable under the Option or the Board determines otherwise in its sole discretion.

4.5   <u>Rights as Stockholder</u>

No Optionee shall be deemed for any purpose to be or to have the rights and privileges of the owner of any Shares subject to any Option unless and until (a) the Option shall have been exercised pursuant to the terms thereof, and (b) the Company shall have issued the Shares to the Optionee.

5.   <u>Administration</u>.

The Plan shall be administered by the Board. Subject to the provisions of the Plan, the Board shall be authorized to interpret the Plan, to establish, amend, and rescind any rules and regulations relating to the Plan and to make all other determinations necessary or advisable for the administration of

the Plan; provided, however, that the Board shall have no discretion with respect to the selection of directors to receive Options under the Plan, the number of Shares subject to any such Options, the purchase price thereunder or the timing of grants of Options under the Plan. The determinations of the Board in the administration of the Plan, as described herein, shall be final and conclusive. The Secretary shall be authorized to implement the Plan in accordance with its terms and to take such actions of a ministerial nature as shall be necessary to effectuate the intent and purposes thereof.

6. **Other Provisions.**

6.1 **Amendment, Suspension or Termination of the Plan**

The Plan may be wholly or partially amended or otherwise modified, suspended or terminated at any time or from time to time by the Board; provided, however, that, except as provided in Section 2.2, no amendment shall be effective unless approved by the affirmative vote of a majority of the votes eligible to be cast at a meeting of stockholders of the Company held within twelve (12) months of the date of adoption of such amendment, where such amendment will:

(a) increase the number of Shares as to which Options may be granted under the Plan, either individually or in the aggregate;

(b) change in any respect the class of persons who constitute Non-Employee Directors eligible to participate in the Plan;

(c) change the requirement of Section 4.2(a) that the Option be priced at Fair Market Value;

(d) extend the maximum period for granting or exercising Options provided herein; or

(e) otherwise materially increase the benefits accruing to Optionees under the Plan.

The provisions of Sections 3 and 4 may not be amended more than once every six months, other than to comport with changes in the Code, the Employee Retirement Income Security Act of 1974, as amended, or the rules or regulations promulgated under either statute.

From and after the Effective Date, neither the amendment, suspension nor termination of the Plan shall, without the consent of the Optionee, alter or impair any rights or obligations under any Option theretofore granted. No Options may be granted during any period of suspension nor after termination or expiration of the Plan.

6.2   Regulations and Other Approvals; Governing Law

(a) The Plan and the rights of all persons claiming hereunder shall be construed and determined in accordance with the laws of the State of Delaware without giving effect to the conflicts of law principles thereof.

(b)  The obligation of the Company to sell or deliver Shares with respect to Options granted under the Plan shall be subject to all applicable laws, rules and regulations, including all applicable federal and state securities laws, and the obtaining of all such approvals by governmental agencies as may be deemed necessary or appropriate by the Board.

(c)  The Board may make such changes in the Plan as may be necessary or appropriate to comply with the rules and regulations of any government authority.

(d)  Each Option is subject to the requirement that, if at any time the Board determines, in its sole discretion, that the listing, registration or qualification of Shares issuable pursuant to the Plan is required by any securities exchange or under any state or federal law, or the consent or approval of any governmental regulatory body is necessary or desirable as a condition of, or in connection with, the grant of an Option or the issuance of Shares, no Options shall be granted or payment made or Shares issued, in whole or in part, unless listing, registration, qualification, consent or approval has been effected or obtained free of any conditions as acceptable to the Board.

(e)  In the event that the disposition of Shares acquired pursuant to the Plan is not covered by a then current registration statement under the Securities Act, and

is not otherwise exempt from such registration, such Shares shall be restricted against transfer to the extent required by the Securities Act or regulations thereunder, and the Board may require any individual receiving Shares pursuant to the Plan, as a condition precedent to receipt of such Shares, to represent to the Company in writing that the Shares acquired by such individual are being acquired for investment only and not with a view to distribution. The certificate for such Shares shall include any legend that the Board deems appropriate to reflect any restrictions on transfer.

6.3  Titles; Construction

Titles are provided herein for convenience only and are not to serve as a basis for interpretation or construction of the Plan. The masculine pronoun shall include the feminine and neuter and the singular shall include the plural, when the context so indicates.

\* \* \* \* \*

I hereby certify that the foregoing Plan was duly adopted by the Board of Directors of Veeco Instruments, Inc. on October __, 1994.

Executed on this _____ day of October, 1994.

_____
Secretary

Corporate Seal